**The document below is hereby signed.**

**Dated: June 30, 2011.**

**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) |
| HOPE 7 MONROE STREET LIMITED | )   Case No. 09-00273 |
| PARTNERSHIP, | )   (Chapter 11) |
| | )   **Not for Publication in** |
| Debtor. | )   **West's Bankruptcy Reporter** |

<u>MEMORANDUM DECISION RE DEBTOR'S RULE 60(b) MOTION</u>

The debtor and Lenan Cappel have filed a motion under Fed. R. Civ. P. 60(b) for relief from a judgment and related orders entered in favor of RIASO, LLC and related entities. The motion will be denied.

I

On April 2, 2009, the debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. Lenan and Pauline Cappel are the limited partners of the debtor which is a District of Columbia limited partnership. The general partner of the debtor was Hope 7, Inc., but its charter was revoked prior to the filing of the bankruptcy petition. On July 17, 2009, the court converted the case to a case under Chapter 7 of the Bankruptcy Code. Marc E. Albert was appointed the Chapter

7 trustee.

The debtor's only asset of significance was real property located at 1021 Monroe St., N.W., Washington, DC.  On November 6, 2009, the limited partners filed a complaint in the Superior Court of the District of Columbia, Case No. 2009-CA-008279, against Musse Leakemariam, RIASO, and Richard Boddie, RIASO's attorney.  (Dkt. No. 68, Ex. B.)  The complaint alleged:

> Leakemariam, although he was not a real estate broker or mortgage lender, convinced . . . the Cappels that he had the capability to obtain refinancing for the existing mortgage loan on the Property and stated that he knew a "hard money" lender who would be willing to provide a bridge loan to Monroe [the debtor] until permanent construction financing became available. . . .
> . . . Leakemariam, through his attorney, Boddie, arranged for a $1,600,000.00 loan between the lender, Riaso and the borrower, Monroe, with the Cappels as the guarantors.
> . . . Riaso was a company organized by Leakemariam in November 2006; less than a week before the settlement on the new mortgage loan. . . . Leakemariam's role as the lender and "broker" for Monroe was unknown to . . . the Cappels.
> . . .
> Monroe and the Cappels did not become aware of Leakemariam's dual role as lender and loan '"broker"' until August 17, 2009.  This information was obtained from Boddie, attorney for Riaso during the course of the Chapter 7 Bankruptcy proceedings involving Monroe.

Compl. 3-4, 11:25 (Dkt. No. 68, Ex. B).

On January 15, 2010, Albert filed a motion to sell the debtor's property located at 1021 Monroe St., N.W., Washington, DC, free and clear of liens, alleging that RIASO's deed of trust was in bona fide dispute by reason of the Superior Court action. RIASO opposed the motion.  On February 17, 2010, the court

2

entered an order approving the sale, and authorizing payment of RIASO's claim subject to certain conditions.[1]

Meanwhile, on February 15, 2010, the debtor had filed an objection to RIASO's proof of claim, alleging that the debtor "does not admit owing this debt as filed by the creditor RIASO, nor does the debtor admit to owing any amount that is the result of the fraudulent inducement to contract and breach of fiduciary duty committed against the debtor," echoing claims to the same effect that the Cappels had asserted in the Superior Court action. On May 25, 2010, the court heard the debtor's objection to RIASO's proof of claim, and on May 28, 2010, the court entered an order overruling the objection to the proof of claim.

On June 10, 2011, the trustee filed a motion to sell to Boddie for $15,000 whatever claims the estate had against RIASO, including any of the claims belonging to it that were being asserted by the Cappels in the Superior Court, and to approve such sale as a compromise of the claims. The Cappels, represented by the debtor's attorney, opposed the motion. At the hearing on the motion, the court heard the testimony of the trustee, Boddie, and Donald Templeton, one of the attorneys who

---

[1] On February 26, 2010, a tenant's association sought reconsideration of the order to sell the property free of its interests, and that objection was eventually settled by way of the court's entry of an order on April 26, 2010, approving a compromise with the tenant's association to which RIASO and the debtor agreed.

3

was representing the Cappels in the Superior Court action.   A
bidding war ensued at the hearing, and the highest bid ultimately
was by Boddie for $30,000.   The court entered an order approving
the sale to Boddie on July 8, 2010.

The debtor now moves pursuant to Fed. R. Civ. P. 60(b) to
vacate the July 8, 2010 Order approving the motion to sell the
claim, and all other rulings in favor of RIASO, presumably
meaning the order overruling the objection to RIASO's proof of
claim, and the order directing payment of that claim from the
proceeds of the sale of the debtor's real property.

II

A court may relieve a party from a final order pursuant to
Fed. R. of Civ. P. 60(b) for any one of six enumerated reasons.
Here, the debtor moves for relief under Rule 60(b)(2), (3), and
(6).

Under Rule 60(b)(2), the court may grant relief from a
judgment on the basis of "newly discovered evidence" that the
party, by "due diligence," could not have discovered in time to
move for a new trial pursuant to Rule 59(b).   To obtain relief
from judgment on the basis of "newly discovered evidence," a
party must show that the following requirements are met: "(1) the
evidence must have been in existence at the time of trial; (2)
the evidence must be such that it was not and could not by the
exercise of due diligence have been discovered in time to present

4

it in the original proceeding; (3) the evidence must not be merely cumulative or impeaching; and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome." *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 4 (D.D.C. 2000) (quoting *In re Korean Air Lines Disaster of September 1, 1983*, 156 F.R.D. 18, 22 (D.D.C. 1994)).

Under Rule 60(b)(3), a court may grant relief from a final order on the basis of "fraud, misrepresentation, or misconduct by an opposing party."  To succeed on a Rule 60(b)(3) motion, a party must "establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990) (quoting *Montgomery v. Hall*, 592 F.2d 278, 278-79 (5th Cir. 1979)).  The rule is intended "to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995).

Finally, under Rule 60(b)(6), a court may grant relief for "any other reason that justifies relief."  However, Rule 60(b)(6) "should be only sparingly used and may not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Salazar v. District of Columbia*, 633 F.3d 1110, 1120 (D.C. Cir. 2011).  Thus, a Rule 60(b)(6) motion requires a

5

party to "show extraordinary circumstances justifying the
reopening of a final judgment." *Id*. at 1121.  For example,
extraordinary circumstances include "when a party timely presents
a previously undisclosed fact so central to the litigation that
it shows the initial judgment to have been manifestly unjust."
*Id*. (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d
572, 574 (D.D.C. 1980)).  But, in determining if extraordinary
circumstances are present, "a litigant's diligence in pursuing
review of a decision . . . is relevant."  *Id*. at 1118-19 (quoting
*Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005)).  Therefore, "a
'lack of diligence' effectively precludes a finding of
'extraordinary circumstance.'" *Id*. at 1121.

The debtor's motion to vacate the orders at issue is
premised on these grounds:

> [P]ost July 8, 2010 discovery revealed newly discovered
> evidence about which the debtor and this court was
> previously unaware.  The November 22, 2006 loan proceeds
> were transferred by wire from entities and/or individuals
> other than RIASO through Attorney Boddie's escrow/trust
> account to the title company.  RIASO did not have a bank
> account nor loan[] agreements with any third parties.
> Hence, we do not know from whence the $1,600,000 loan
> monies came.
>     . . . Based upon the developed evidentiary record,
> Debtor now has sound reason to believe that RIASO was a
> sham corporation created solely as a conduit for certain
> yet verified investors' undocumented $1,600,000.00 and to
> conceal Leakemariam's duplicitous role as broker and
> lender, along with his family and its Trusts.  Consistent
> therewith, its Proof of claim was equally fictitious.
>     . . . Neither RIASO nor its lawyer disclosed to
> Debtor or to the court that RIASO did not actually make
> the loan here.  Nor did they disclose Leakemariam's
> conflicting relationships, i.e. management of RIASO and
> partial ownership, and its benefits to him and his family

at Debtor's expense.
        . . . RIASO's representations or lack thereof are
potentially outcome determinative. If indeed,
Leakemariam would have disclosed material facts about
RIASO . . . the debtor would have dutifully challenged
RIASO's standing and proof of claim.

Debtor's Mot. Relief J. 9, 13-15 (Dkt. No. 146).

In response, RIASO asserts that the new evidence does not

meet the requirements of "newly discovered evidence" under

60(b)(2) because, given that the debtor was made aware of Mr.

Leakemariam's role in RIASO in August 2009, "the debtor has

clearly failed to establish[] that due diligence was exercised."

Riaso's Opp. to Mot. Relief J. 5-6 (Dkt. No. 151). Its reasoning

is as follows:

> Beginning in August 2009, in the Montgomery County
> proceeding and in this bankruptcy, through March 2010,
> with the D.C. Superior Court case, the debtor had
> multiple court-sanctioned discovery processes in place.
> Nevertheless, the debtor, and the Cappels, absolutely
> failed to diligently proceed with any discovery. In
> fact, there has been no attempt to explain to this Court
> why the allegedly "new evidence" could not have been
> presented to this Court or obtained by the Debtor from
> August 2009 to April 12, 2010. Frankly, this is a burden
> that neither the Debtor nor the Cappel[s] can meet.

Id. at 8.

Further, RIASO asserts that the debtor is not entitled to

relief pursuant to 60(b)(3) because "the debtor's bare assertion

that RIASO fraudulently misrepresented material facts regarding

the November 2006 loan" is "insufficient to support any Rule 60

motion":

> The Debtor has not established a basis for a finding of
> clear and convincing evidence that the creditor or the

7

> undersigned counsel caused the orders of this court to be entered unfairly, through fraud or misrepresentation to the court, or that its presentation of the case to the court was hampered in any way. The fact is, as set forth above, the debtor - represented by four separate attorneys in not less than four separate legal matters, . . . simply failed to diligently pursue this matter. And now that no appeal was filed and no other alternatives are available, the debtor seeks to vacate prior orders of this Court.

*Id*. at 10. Further, RIASO asserts that any nondisclosure by RIASO was not fraudulent because, absent discovery, RIASO was under no obligation to disclose information to the debtor:

> . . . Neither the undersigned, nor any other counsel for RIASO were obligated to suggest to this Court or to otherwise advise the Court that there were facts with which the debtor perhaps could have fashioned any cause of action. The Debtor . . . opted to "withdraw" the objection to the Proof of Claim before completing discovery, obviously for reasons it then deemed sufficient. That it may have acted differently on different facts is no basis for grounding a complaint of fraud. This Court need not decide whether relief under Rule 60(b) for fraud is available to the Debtor had the discovery process continued and had RIASO culpably withheld material facts. This Court need only cite the well-settled rule that the mere non-disclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud for purposes of vacating a judgment under Rule 60(b).

*Id*. at 11 (citations omitted).

Finally, RIASO claims that the debtor is not entitled to relief under 60(b)(6) because "[t]he Debtor has not provided any factual support for this kind of relief, nor has it properly argued that exceptional circumstances exist warranting the granting of extraordinary relief by this court." *Id*. at 12.

8

III

The new evidence the debtor brings forth does not warrant relief from judgment pursuant to Fed. R. Civ. P. 60(b)(2), (3), or (6) because it does not constitute "newly discovered evidence," it does not establish that the orders granted by this court were "fraudulently obtained" by RIASO, and it does not "show extraordinary circumstances justifying the reopening of a final judgment."

A

The new evidence does not constitute "newly discovered evidence" pursuant to 60(b)(2) because it is not "of such a material and controlling nature as will probably change the outcome" of either the orders overruling the objection to RIASO's proof of claim and directing payment of that claim, or the order granting the trustee's motion to sell the claim to Boddie.

As to the order granting the motion to sell the claim, the new evidence does nothing to undermine this court's reasons for approving that sale as a settlement.  Pursuant to Fed. R. Bankr. P. 9019, the court may approve a "compromise or settlement" on motion by the trustee.  In deciding whether to approve a settlement, "the responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement '*fall[s] below the lowest point in the range of reasonableness.*'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d

9

Cir. 1983) (emphasis added) (quoting *Newman v. Stein*, 464 F.2d
689, 693 (2d Cir. 1972)).  To make this determination, the judge
"need not hold a mini-trial," *Advantage Healthplan, Inc. v.
Potter*, 391 B.R. 521, 554 (D.D.C. 2008) (quoting *In re Fishell*,
No. 94-1109, 1995 U.S. App. LEXIS 3127 (6th Cir. Feb. 16, 1995)),
but he "must apprise himself of all facts necessary for an
intelligent and objective" "judgment as to whether a proposed
compromise is fair and equitable."  *Id.* (quoting *Protective Comm.
for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414, 425 (1968)).  Factors that should be considered
include: "(1) probability of success in the litigation; (2)
difficulties, if any, with collection; (3) the complexity of the
litigation, including the expense, inconvenience and delay
attendant to the litigation; and (4) the interest of creditors."
*Id.*  While this judgment is an "informed one based upon an
objective evaluation of developed facts," *id.*, the judge "is not
to substitute [his] judgment for that of the trustee, and the
trustee's judgment is to be accorded some deference."  *Hill v.
Burdick* (*In re Moorhead Corp.*), 208 B.R. 87, 89 (B.A.P. 1st Cir.
1997).

Here, this court approved the settlement of the claim after
hearing testimony from the trustee that settlement was in the
best interests of the estate in light of the uncertainty of the
amount of damages and the cost and delay of litigation.  Trans.
6/30/2010 hearing at 20-21, 26 (Dkt. No. 148).

10

As to the uncertainty of damages, the trustee testified that even if the estate could succeed on a fraud claim against RIASO and Boddie, damages would be difficult to measure. *See id*. When asked by the court what the theory of damages might be, specifically if the debtor could have obtained a lower interest rate from a broker who was not conflicted, the trustee made the following response:

> That was my issue.  I really wasn't quite sure I could see how it was going to get to inure to any benefits to my estate, taking into account what first was owed it . . .
> You had a situation where the principal of the Debtor had just been imprisoned, went to jail, this was a stalled project, and there was really no economic capability of this Debtor, per se, to do much of anything.  The property was going to be lost.

*Id*. at 26.

This court's findings were consistent with the trustee's testimony on the issue of damages:

> There's no indication that the Debtor could have obtained a better refinancing than the one that it did obtain. The Debtor's principal had been in jail.  As indicated, the Debtor really didn't have the wherewithal to complete construction, and if the Debtor had gone out on the market to get refinancing, it's doubtful that it would have been able to get any better deal.  So from the standpoint of damages I think it's very uncertain.

*Id*. at 68.

With respect to cost and delay of litigation, the trustee testified that the estate "didn't have the resources to spend a year litigating a fraud case."  Trans. 6/30/2010 hearing at 20-21 (Dkt. No. 148).  Further, he testified that settlement would

11

allow him to avoid delays in the administration of the estate, given that settlement of the claim was the only remaining substantive matter in the case. *See id*. at 21. This court confirmed that "the Trustee is entitled to . . . settle a cause of action, . . . and attempt to liquidate the assets of the estate instead of engaging in litigation which only delays distributions to creditors." *Id*. at 67-68.

The new evidence, having to do primarily with the merits of the fraud claim, does not undermine any of the foregoing reasons for settlement provided by the trustee. The trustee's testimony even suggests that the debtor's new evidence was already known to and considered by him in making his determination. The debtor claims as new evidence that the loan funds were transferred from an entity other than RIASO through Mr. Boddie's trust account, and that RIASO did not have a bank account or loan agreements with third parties, all of which shows "we do not know from whence the $1,600,000 monies came." Debtor's Mot. Relief J. 13 (Dkt. No. 146). However, the trustee indicated that he was aware of ambiguities surrounding the source of funds:

> Q.   And you were aware that loan monies were provided
>      to RIASO from another source on November 23, 2006?
> A.   I verified that the money was conveyed to a
>      settlement insurance, you know, a title insurance
>      company.
>
> Q.   And that money came from Mr. Boddie's trust
>      account?
> A.   It appeared that it came from a trust account,
>      that's correct, in Mr. Boddie's office.

> Q.  And do you know what the source is, where those
>     monies, that $1.6 million came from?
> A.  No, sir.  No, Mr. Temple.
>
> Q.  Are you aware as to whether there exists an
>     agreement between Mr. Leakemariam and the party
>     that actually provided the monies for the note?
> A.  I'm not aware of any such - any agreements.

Trans. 6/30/2010 hearing at 23-24 (Dkt. No. 148).  The trustee

also indicated to the court that he was aware of ambiguities

surrounding RIASO's ownership, particularly Mr. Leakemariam's

alleged role in RIASO:

> Q.  And are you aware of who the owners are of RIASO?
> A.  There was some reference, at the meeting of
>     creditors, about Musse Leakemariam perhaps being
>     the owner of this company, but other than that I
>     know nothing else.

*Id.*  In spite of the ambiguity surrounding the source of funds

and the ownership of RIASO, the trustee testified that, in his

business judgment, settlement of the claim was in the best

interests of the estate.  *See id.* at 21.

Further, the new evidence does not push the settlement

"below the lowest point in the range of reasonableness."  At

best, the new evidence is pertinent to an evaluation of the

"probability of success in litigation" factor, a factor that did

not predominate in the trustee's reasons for settling or this

court's reasons for approving the settlement.  However, even if

the debtor could show that the new evidence substantially

increases the likelihood of success of litigation,[2] a settlement
does not fall below the range of reasonableness just because it
might have been successfully litigated.  A court "may . . .
approve the compromise even if it believes that the trustee
ultimately would have been successful."  *In re Teletronics
Servs., Inc.*, 46 B.R. 426, 428 (E.D.N.Y. 1984).  Any other
approach would defeat the purpose of a settlement:

> Obviously it would not be a settlement if to obtain
> approval the trustee would have to demonstrate that he
> could not succeed had the . . . claim been pressed.  All
> that he must do is establish to the reasonable
> satisfaction of the referee that, all things considered,
> it is prudent to eliminate the risks of litigation to
> achieve specific certainty though admittedly it might be
> considerably less or more than were the case fought to
> the bitter end.

*Id.* at 430 (citations omitted) (quoting *Florida Trailer and
Equip., Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960)).

Alternatively, the new evidence does not constitute newly
discovered evidence because it is apparent that it could have
been discovered "by the exercise of due diligence" prior to the
relevant hearings: the hearing on the debtor's objection to
RIASO's proof of claim on May 25, 2010, or the approval hearing
on June 30, 2010.  The debtor claims that the new evidence was

---

[2] The debtor has yet to demonstrate how the new evidence
would strengthen its objection to RIASO's proof of claim or its
fraud claim against RIASO.  It is not apparent to this court how
RIASO's behavior constitutes fraud - RIASO is free to operate
without a bank account, as well as to distribute proceeds of the
sale from real property directly to its shareholders and
creditors.

obtained after the hearing, in the course of discovery for a separate suit by Mr. Cappel against Mr. Leakemariam. *See* Debtor's Mot. Relief. J. 1-2 (Dkt. No. 146). Of particular importance were Mr. Leakemariam's answers to interrogatories, dated August 9, 2010, and a deposition of Mr. Leakemariam, taken September 23, 2010. *Id.* However, in the complaint for that suit, the debtor conceded that it was aware of Mr. Leakemariam's role in RIASO as early as August 17, 2009, many months before the orders at issue here were litigated. Trustee's Mot. Sell Prop. 11:25, Jan. 15, 2010 (Dkt. No. 68, Ex. B, Part I).

The debtor, therefore, had approximately ten months prior to the approval hearing to depose Mr. Leakemariam, or to make other efforts to discover the information it now claims as new evidence. In its Motion for relief from judgment, the debtor only outlines efforts made to discover the new evidence after the approval hearing in this court. Debtor's Mot. Relief J. 7-9 (Dkt. No. 146). The debtor offers no explanation for why discovery of this evidence was not pursued prior to the hearing, and it is therefore not clear that this evidence could not have been discovered by exercise of due diligence prior to the hearing.

B

The debtor is not entitled to relief from judgment pursuant to 60(b)(3) because the debtor has not shown by clear and convincing evidence that the opposing party, RIASO, fraudulently

15

obtained the approval of the settlement by failing to disclose information about the source of the funds or its ownership.

As evidenced by the foregoing discussion of this court's approval of the settlement, approval was not contingent on the availability of the source of funds or ownership information. Therefore, even if RIASO did withhold this information from the court, its actions did not influence the judgment to approve the settlement.

C

Finally, the debtor is not entitled to relief from judgment pursuant to 60(b)(6) because it has not shown extraordinary circumstances, and even if it had, its lack of diligence in pursuing review of the July 8, 2010 Order precludes relief.

No extraordinary circumstances exist or have been shown by the debtor.  With respect to the order to approve the settlement, because the information does not affect this court's reasoning in approving the settlement, it cannot be said that the debtor has brought forth facts "so central to the litigation" that the orders in favor of RIASO and/or the order approving settlement are rendered "manifestly unjust."  Further, the lack of diligence by the debtor in making efforts to discover the source of funds and ownership information would preclude a finding of extraordinary circumstances were they to be shown.

IV

For the foregoing reasons, I will deny the debtor's Motion

for relief from judgment pursuant to Rule 60(b).

A separate order follows.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Office of United States
Trustee.